UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FRANK POPOLIZIO,

                        Plaintiff,

    -against-                                    1:11-CV-1329 (LEK/CFH)

DOUGLAS SCHMIT,

                        Defendant.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

On November 9, 2011, Plaintiff Frank Popolizio ("Plaintiff") filed a Complaint against Defendants Douglas Schmit ("Schmit") and Eric Craig ("Craig") (collectively, "Defendants") asserting five causes of action arising from the parties' contractual relationship. Dkt. No. 1 ("Complaint"). On March 9, 2012, Plaintiff entered into a stipulation of discontinuance with Defendant Craig, which the Honorable David R. Homer,[1] United States Magistrate Judge, so ordered on March 12, 2012. Dkt. Nos. 11, 14. As a result, Defendant Schmit is the only Defendant remaining in this matter.

On March 12, 2012, Defendant Schmit filed a Motion to dismiss. Dkt. No. 12 ("Motion"). Plaintiff filed a Response in opposition on April 3, 2012, and Defendant Schmit subsequently filed a Reply on April 6, 2012.[2] Dkt. Nos. 15 ("Response"), 16 ("Reply"). Presently before the Court is

---

    [1] Due to Judge Homer's retirement, this case was reassigned to the Honorable Christian F. Hummel, United States Magistrate Judge, on September 4, 2012. Dkt. No. 19.

    [2] In lieu of a memorandum of law, Defendant Schmit filed as his Reply a "Reply Affidavit." While the Affidavit properly contains some factual and procedural statements, it violates Local Rule 7.1(a)(2), which provides that "[a]n affidavit must not contain legal arguments but must contain factual and procedural background that is relevant to the motion the affidavit supports." Therefore,

Defendant Schmit's Motion.

## II. BACKGROUND

In or around September 2006, Plaintiff entered into a contract with Defendants for the importation, breeding, and sale of Low Line cattle.[3] Compl. ¶ 8. Plaintiff is a domiciliary of Schenectady County, New York; Defendant Schmit is a domiciliary of North Dakota; and Defendant Craig is a domiciliary of Wisconsin. Id. ¶¶ 1-3. As a part of their agreement, Plaintiff and Defendants bought two cows and two bulls. Id. ¶ 9. The cattle were boarded at farms belonging to Defendants, and the parties divided ownership interests in each animal. Id. ¶ 10. The parties agreed that fees and revenues associated with the breeding of the cattle would be divided according to the parties' ownership shares. Id. ¶ 11. Plaintiff's claims arise from the parties' ensuing forays into animal husbandry.

In his Complaint, Plaintiff asserts that the Low Line Cattle Association has established rules regarding the breeding of registered animals. Id. ¶ 9 If an embryo from a superior pair is to be incubated in another cow, the owners of the genetic parents need not be consulted for permission. Id. ¶ 12. However, the owners of the genetic parents are entitled to their proportionate share of the fees and revenue from the embryo and resulting calf. Id.

Plaintiff contends that Defendants bred the parties' cattle, producing embryos, which were in turn harvested. Id. ¶ 13. Defendants sold some of the embryos, but retained others, which were

---

the Court declines to consider any such improper argumentation contained in the Affidavit. See Oneida Indian Nation v. Cnty. of Oneida, 802 F. Supp. 2d 395, 425 n.24 (N.D.N.Y. 2011) (refusing, under Local Rule 7.1(a)(2), to consider the legal arguments contained in affidavits submitted to the court).

[3] Plaintiff identifies Low Line cattle as a "specialty breed of cattle." Compl. ¶ 8.

brought to term, thus increasing Defendants' herds. Id. ¶ 13. Specifically, Plaintiff contends that Defendants have produced at least 85 live calves from implanted embryos and that the live calves are the result of the sale of at least 104 embryos. Id. ¶ 14. Pursuant to the Low Line Cattle Association's rules, Defendants were not required to obtain Plaintiff's consent in order to "create" and implant the embryos. Id. ¶ 15. However, Plaintiff argues that pursuant to these rules, Defendants were required to pay Plaintiff his proportionate share of any fees and revenues generated by the sale of the embryos and calves. Id. Plaintiff further claims that Defendants used the jointly-owned animals and a bull owned solely by Plaintiff to expand their herds, without Plaintiff's knowledge or consent.

While all payments to Plaintiff were to be forwarded to Plaintiff's address in Schenectady County, Plaintiff had received no such payment as of the filing of the Complaint. Id. ¶¶ 16-17. Plaintiff has further demanded an accounting from Defendants, but Defendants have refused to comply with this request. Id. ¶ 19.

Based on these facts, Plaintiff brought a cause of action seeking an accounting, and also brought claims for: (1) breach of contract; (2) unjust conversion; and (3) unjust enrichment. Id. ¶¶ 20-59. Plaintiff asserts that the Court has jurisdiction to hear this matter under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy is greater than $75,000. Id. ¶¶ 1-7. For a more complete statement of Plaintiff's claims and factual allegations, reference is made to the Complaint.

According to Defendant Schmit, none of the cattle purchased pursuant to this arrangement were from New York or were purchased from a New York seller. Dkt. No. 12-4 ¶ 8. None of the cattle involved were ever boarded in New York. Id. ¶ 9. None of the bull semen sold pursuant to

the agreement was ever sold in New York or to a New York buyer.  Id. ¶ 10.  Further, Defendant Schmit asserts that he never traveled to New York for any purpose related to the business arrangement.  Id. ¶ 11.

Defendant Schmit asserts generally that Plaintiff has had no personal involvement in any of the transactions that have taken place pursuant to the initial arrangement.  Id. ¶ 13.  During his business dealings with Plaintiff, Defendant Schmit has never received any mail from Plaintiff.  Id.  Aside from sending three or four payments to Plaintiff's New York address, Defendant Schmit insists that he has had no business interactions with anyone or any company in New York.  Id.  Defendant Schmit owns no property in New York and has no business address or phone number there.  Id. ¶ 15.

### III. LEGAL STANDARD

The same standard of review is applied both to motions seeking dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and those seeking dismissal for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.  See Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005); Savoy Senior Housing Corp. v. TRBC Ministries, LLC, 401 B.R. 589, 596 (Benkr. S.D.N.Y. 2009).

Where a party moves to dismiss an action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant.  Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).  Prior to discovery, a plaintiff may survive a 12(b)(2) motion to dismiss by pleading in good faith legally sufficient allegations of jurisdiction.  Id. (citing Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)).  Where a court relies only upon the

4

pleadings and supporting affidavits, a plaintiff need only make a *prima facie* showing of personal jurisdiction over a defendant. Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986) (citing Marine Midland Bank N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)); Grand River Enters. Six Nations, Ltd. v. Prvor, 425 F.3d 158, 165 (2d Cir. 2005).

"A *prima facie* showing of jurisdiction 'does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.'" Tamam v. Fransabank Sal, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (citation omitted). Pleadings that assert only "conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as a factual allegation" do not meet this burden. Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998) (quotation omitted). Finally, while a court is to assume the truth of all well-pleaded factual allegations that support a finding of personal jurisdiction, Ball, 902 F.2d at 197, it should "not draw 'argumentative inferences' in the plaintiff's favor." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).

"Unlike a motion to dismiss pursuant to Rule 12(b)(6), deciding a Rule 12(b)(2) [or Rule12(b)(3)] motion necessarily requires resolution of factual matters outside the pleadings." ADP Investor Communication Servs. Inc. v. In House Att'y Servs. Inc., 390 F. Supp. 2d 212, 217 (E.D.N.Y. 2005); see also In re Stillwater Capital Partners Inc. Litig., 851 F. Supp. 2d 556, 566-67 (S.D.N.Y. 2012) ("[A] court may consider materials outside the pleadings [on a Rule 12(b)(2) motion], but must credit plaintiffs' averments of jurisdictional facts as true."). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and

doubts are resolved in the plaintiff's favor." Whitaker, 261 F.3d at 208 (quoting A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)); see also S. New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010); Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir. 2007) ("In analyzing whether the plaintiff has made the requisite prima facie showing that venue is proper, [courts] view all the facts in a light most favorable to plaintiff.").

## IV. DISCUSSION

Defendant Schmit argues that this case should be dismissed either: (1) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction; or (2) pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue. Dkt. No. 12-5 ("Defendant's Memorandum of Law") at 2. In the alternative, if the Court were not to dismiss the case, Defendant Schmit requests that the Court transfer the action, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the District of North Dakota. Id.

The Court must engage in a two-part analysis to determine whether it may properly exercise *in personam* jurisdiction over Defendant Schmit: first, it must determine whether the laws of New York provide for jurisdiction; if they do, the Court must then decide whether an exercise of jurisdiction comports with federal due process requirements. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). The Court finds that jurisdiction over Defendant cannot be based upon New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") §§ 301 or 302. The Court therefore does not reach the second inquiry in the above analysis. The Court also does not reach the issues of proper venue and Defendant Schmit's alternative request for a transfer of venue.

### A. N.Y. C.P.L.R. § 301

6

Section 301 of the N.Y. C.P.L.R. allows a court to "exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." N.Y. C.P.L.R. § 301. The comments to that section make clear that it provides for general *in personam* jurisdiction grounded on presence, consent, domicile, and doing business. Id., cmt. C301.1.

"[A] corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985) (quoting Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267 (N.Y. 1917)). To satisfy the "doing business" standard, "a plaintiff must show that a defendant engaged in 'continuous, permanent, and substantial activity in New York.'" Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) (quoting Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990)).

A court should consider several factors "to determine whether a defendant can be reached under Section 301, including whether a defendant has an office, solicits business, has bank accounts and other property, or employs workers in the state." Cortland Line Co. v. Vincent, No. 98-CV-259, 1999 WL 305369, at *2 (N.D.N.Y. May 7, 1999) (citing Hoffritz, 763 F.2d at 58). "Arguably the most important factor needed for a finding of jurisdiction under § 301 is the in-state presence of employees engaged in business activity." Id. at *2 (citing Pellegrino v. Stratton Corp., 679 F. Supp. 1164, 1171 (N.D.N.Y. 1986)). A court may also find jurisdiction when the activities of a non-domiciliary go beyond mere solicitation in encouraging others to "spend money (or otherwise act) in a manner that would benefit the [non-domiciliary]." Wiwa, 226 F.3d at 98. The substantial

7

solicitation must be continuous and permanent. See Beacon Enters. Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir. 1983). Section 301's "doing business" standard is "stringent, because a defendant who is found to be doing business in New York in a permanent and continuous manner may be sued in New York on causes of action wholly unrelated to acts done in New York." Overseas Media, Inc. v. Skvortsov, 407 F. Supp. 2d 563, 567-68 (S.D.N.Y. 2006) (internal quotation marks omitted).

Here, Plaintiff fails to satisfy the requirements of § 301. Indeed, Plaintiff's Response does not include any analysis predicated on § 301 or even mention § 301. Nevertheless, in the interest of justice, the Court has considered the submissions and accompanying Affidavits and concluded that it may not exercise jurisdiction under § 301.

**B. N.Y. C.P.L.R. § 302**

N.Y. C.P.L.R. § 302 is New York State's long-arm statute. Subsection (a) provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state . . . ; or
> 3. commits a tortious act without the state causing injury to person or property within the state, . . . if he
>     (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>     (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
> 4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a). It is not entirely clear, however, under which subsection of § 302(a) Plaintiff asserts that jurisdiction is properly exercised by the Court. Plaintiff cites N.Y. C.P.L.R. § 302(a)(3)(i), but then bases his argument entirely on two cases applying § 302(a)(1). Response at

7-8.[4]  Defendant Schmit, for his part contends that the only conceivable basis for personal jurisdiction (which he still argues is lacking) that might arise from the facts alleged in Plaintiff's Complaint is § 302(a)(1). Def.'s Mem. at 5.

Section 302(a)(1) provides for personal jurisdiction over a party not present in the state where that party "transacts business" within the state, such that the nonresident may be deemed to have "purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." Bank Brussels Lambert, 171 F.3d at 787 (quoting Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 18 (N.Y. 1970) (internal quotation marks omitted)); see also Don King Prods., Inc. v. Douglas, 735 F. Supp. 522, 527 (S.D.N.Y. 1990) (holding that the central question for § 302(a)(1) analysis is whether defendant performed purposeful acts in New York in relation to the contract which is the basis upon which jurisdiction is asserted) (citations omitted). "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Sole Resort, S.A. de C.V. v. Allure Resorts Mgt., LLC, 450 F.3d 100, 101 (2d Cir. 2006) (citation omitted). A single purposeful transaction is sufficient to confer jurisdiction under this prong, so long as the cause of action against the non-resident party arises from that transaction. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158 (2d Cir. 2010). However, the mere existence of an ongoing relationship is in itself insufficient to confer personal jurisdiction under § 302(a)(1). See, e.g., Int'l Alliance of First Night Celebrations, Inc. v. First Night, Inc., No. 08 CV 1359, 2009 WL 1457695, at *4 (N.D.N.Y. May

---

[4] In referring to specific pages in the Response, the Court uses the numbers electronically added to the top of each page by the Clerk of the Court, as opposed to the numbers on the bottom.

22, 2009); Nat'l Tel. Directory Consultants, Inc. v. Bellsouth Adver. & Pub. Corp., 25 F. Supp. 2d 192, 196 (S.D.N.Y. 1998); Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc., 2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998).

Courts must look to "the totality of circumstances concerning the party's interactions with, and activities within, the state" to determine whether that party has "transacted business" with the state. Bank Brussels Lambert, 171 F.3d at 787. In considering whether a defendant has transacted business in New York within the meaning of Section 302(a)(1), the Second Circuit has stated that:

> The question of whether an out-of-state defendant transacts business in New York is determined by considering a variety of factors, including: (i) whether the defendant has on-going contractual relationship with a New York corporation, (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship, (iii) what the choice-of-law clause is in any such contract, and (iv) whether the contract requires [defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. Although all are relevant, no one factor is dispositive. Other factors may also be considered, and the ultimate determination is based on the totality of the circumstances.

Agency Rent A Car Sys. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (citations omitted).

In this case, while there was an ongoing contractual relationship between the parties, the contract was not negotiated or executed in New York, and Plaintiff has not alleged that it contained any choice-of-law or forum-selection provision. Further, the contract provided for a passive investor agreement in which Plaintiff retained no control over Defendants' actions.[5] Contra

---

[5] Cf. Steinberg v. Bombardier Trust, Nos. 07 Civ. 1212, 07 Civ. 1217, 2008 WL 2787720, at *4 (S.D.N.Y. July 09, 2008) ("Although Defendants may have known that investment decisions were made in New York, there is no evidence that the Defendants conducted business in New York relating to the claims in this case-fraudulent transfer, conversion, and unjust enrichment. The investments and redemptions took place in the Bahamas and Canada.").

Schomann Intern. Corp. v. Northern Wireless, Ltd., 35 F. Supp. 2d 205, 209-11 (N.D.N.Y. 1999) (contract contemplated ongoing relationship, choice of law provision stated that New York law governed, and out of state defendant was subject to "considerable supervision" by plaintiff's New York office); see also Modern Industrial Firebrick Corp. v. Shenango Inc., No. 11-CV-959, 2012 WL 2405236, at *5 (W.D.N.Y. June 25, 2012). Indeed, based on the facts alleged by Plaintiff, Defendant Schmit had no obligation to consult Plaintiff about any business dealings arising from the transaction or communicate with Plaintiff in any way; Defendant Schmit was merely required to share profits with Plaintiff.

Plaintiff has further failed to allege that he transacted business with Defendant Schmit in person. Generally, "[c]ontacts through telephone calls, the mail, and by facsimile are insufficient to confer personal jurisdiction." Kahn Lucas Lancaster Inc. v. Lark Int'l Ltd., 956 F. Supp. 1131, 1135 (S.D.N.Y. 1997). Rather, such "communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself." Maranga v. Vira, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005). The leading example of such a projection occurred in Parke-Bernet Galleries, Inc. v. Franklin, in which a defendant participated via telephone in a live auction occurring in New York. 26 N.Y.2d 13 (N.Y. 1970). In Parke-Bernet Galleries, Inc., "the nature of the defendant's call placed to New York effectively placed the defendant himself in New York where a transaction was occurring." Three Five Compounds, Inc. v. Scram Technologies, Inc., No. 11 Civ. 1616, 2011 WL 5838697, at *9 (S.D.N.Y. Nov. 21, 2011); see also Fischbarg v. Doucet, 9 N.Y.3d 375, 382 (N.Y. 2007) (out-of-state defendant utilizing an attorney licensed in New York "projected themselves into our state's legal market"); Deutsche Bank Sec., Inc. v. Montana Bd. of Inv., 7

11

N.Y.3d 65, 71-72 (N.Y. 2006) (jurisdiction proper where "sophisticated institutional trader" engaged in multiple bond transactions through electronic communications with New York, thereby "availing itself of the benefits of conducting business here"). Cases such as these, in which the defendants virtually projected themselves into a specific New York market, are easily distinguished from a case in which a defendant communicates by phone and email about a discrete proposed or existing business transaction. See Three Five Compounds, Inc., 2011 WL 5838697, at *8-9 (collecting cases).

In this case, the "center of gravity" of the contractual relationship is certainly where the cattle were housed or where breeding or cattle transactions took place. Plaintiff has in no way pleaded facts to suggest that New York – where a single investor lived – was the primary locus of business dealings or that Defendant Schmit "projected" himself into the New York market. Fischbarg, 9 N.Y.3d at 382. Further, the fact that Defendant Schmit remitted payments to Plaintiff's New York address is not in and of itself sufficient to establish personal jurisdiction. Sandoval v. Abaco Club on Winding Bay, 507 F. Supp. 2d 312, 318 (S.D.N.Y. 2007) ("There is no dispute that the contract did not specifically require that payments were to be sent to New York. Defendant admits that it did in fact send its payments to New York, but this is not sufficient basis to establish personal jurisdiction"); Burrows Paper Corp. v. R.G. Engineering, Inc., 363 F. Supp. 2d 379, 386 (N.D.N.Y. 2005); Roper Starch Worldwide, 2 F. Supp. 2d at 475 ("[M]erely sending payment to New York is not sufficient to establish personal jurisdiction over a defendant under § 302(a)(1)").

Therefore, upon review of the totality of circumstances, the Court concludes that Plaintiff does not allege facts that, if true, would allow for jurisdiction under N.Y. C.P.L.R. § 302(a)(1). To

12

the extent that Plaintiff is attempting to assert that the Court may exercise personal jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(i), the Court also finds this argument unavailing based on the analysis of Defendant Schmit's lack of substantial business contacts with the State of New York discussed *supra*.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant Schmit's Motion (Dkt. No. 12) to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is **GRANTED**; and it is further

**ORDERED**, that Defendant Schmit's Motion (Dkt. No. 12) to transfer venue is **DENIED as moot**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED without prejudice**, and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED.**

DATED:  January 28, 2013
        Albany, New York

Lawrence E. Kahn
U.S. District Judge